Number 19-3555, Western Missouri, United States v. Steven Traylor. Mr. Moss, we'll hear from you first. Your Honor, please the court. On appeal, the government now concedes the record demonstrates that the canine alert in this case violated Rodriguez under the framework established by the lower court. The government argues plain error review because Mr. Taylor did not bring that evidence to the court's attention, but the government does concede the first three prongs of plain error are satisfied, which leads only to the fourth prong, fairness, integrity, and reputation of judicial proceedings. It is accurate that defense counsel, the magistrate judge, and the district judge all overlooked this evidence, but the government did not. In fact, the government response to the suppression motion cites the body cam evidence in asserting that the canine unit did not arrive until 5-16-17. My reply brief sets out several authorities that show why this satisfies the fourth prong of plain error. For one, the prosecutor has a duty to correct the record. That's Colvin v. Taylor, this circuit. A duty to not mislead. A duty of candor. Those duties are key to the integrity of the system. The government's advocacy in this case for a report and recommendation it knew was based on an erroneous finding is precisely the type of error that warrants a remedy from this court because it bears directly on the fairness, integrity, and public reputation of judicial proceedings. We believe the record shows, even if we are in plain error review, that reversal is required. Even aside from that fact, even if the court is not willing to disturb that undisputed fact, reversal is still required in this case because Mr. Taylor's objections adequately placed the issue before the district judge. Those objections included the claim that the traffic ticket was completed at 5-14-01, about a half minute earlier than the R&R found. Also that the K-9 did not alert until 5-18-46, nearly three minutes after the R&R found that the unit had arrived. Additionally, Mr. Taylor argued that the police action unreasonably extended what should have been a routine 5-10 minute stop to more than 20 minutes. Now the R&R holds that the K-9 arrived at approximately 5-15, but that does not show that the alert occurred by 5-15-26, much less 5-15-01 as Mr. Taylor asserted. An extension of the stop by any amount of time under Rodriguez violates the Fourth Amendment. So we believe the record is clear, regardless of which standard the court finds applicable, reversal is required. And additionally, I do want to point out, although the government advocates for plain error regarding this issue, really the only possibility it could apply to is that one particular fact pertaining to the dash cam video which shows the K-9 unit not arriving until a couple of minutes after the magistrate court found that the basis for the stop would have been completed. The government also argues that Detective Brown had reasonable suspicion to extend the stop in this case. They argue that a prolonged decision on detention would have prevented this case. We believe that argument should be considered because one, the government did not object to the R&R, and two, they advocated, in fact, for its unqualified adoption. And the R&R set up a framework by which it found that the stop became unreasonable at 5-15-26. That's kind of the threshold timing that the magistrate court relied upon and was adopted by the district court. Is there any authority, Mr. Moss, that the government must object and ask the court to add alternative grounds in order to seek affirmance on an alternative ground? Not in all cases. In this particular case, absolutely, because the R&R is insufficient to allow this court to rely upon those alternative grounds. I agree there's some tension between... That's always the case when there's a possibility of an alternative ground for affirmance. It's because the ground relied on by the district court is insufficient. It's not always the case because sometimes that fact is not disputed, Judge. Sometimes there's a fact that the parties don't see that is determinative that allows the appellate court to affirm on that basis. In this case, however, we did dispute reasonable suspicion. We disputed that. The magistrate court adopted by the district court did not make those additional findings that the government is relying on. The findings specifically that Mr. Traylor acted nervously, that he was difficult to understand, that he paced around. The district court never made those findings. You're arguing about the facts now, but you're not saying that the government's precluded from arguing reasonable suspicion as a legal matter on appeal, are you? Based on the facts that are in the record? That's correct. That's correct. And I would agree they can argue that that's the key, based on the facts that are in the record. All right. So what do you have to say about the merits of reasonable suspicion based on the facts that were found? Okay. Well, initially, I'd like to point out the facts that the government relies on in its brief, which were not found. Those that I just recounted, the government basically cites to the transcript things that he acted, constantly acted nervously. He was difficult to understand. He paced around. And we would argue that plain error review should apply to the, at a minimum, plain error review should apply to the government's ability to rye on this basis. But the court never found those facts. Additionally, the lower courts did not find that $300 is a large amount of cash, especially for a person like Mr. Traylor that is employed. It did not find that two phones were suspicious, especially considering the fact that Mr. Traylor explained that one of those phones was no longer working. The government simply cites things from the transcript as though they were fact. And they were not factual findings. We don't believe they support reasonable suspicion. The government also notes facts prior to the stop as a basis for reasonable suspicion. But I want to point out, page 27 of the transcript, Detective Brown did not rely on any of that information at all. He exclusively discounted that. So I think that is relevant, at least to the court's inquiry. But we would say even if he had, that evidence also would have been insufficient. That info included that two weeks prior to the stop, the charger, not Mr. Traylor, had been seen in a known drug area, that the charger had been seen at this Clark Street address, not Mr. Traylor. But it also had a different license tag, which actually corroborated Mr. Traylor's response at the time that he had recently purchased it. I do notice that I'm into my rebuttal time. Can I ask one question, Mr. Moss? Yes. As I understand your objection to the report and recommendation, you basically said there was a one-minute gap, or whoever, I don't know if you were representing Mr. Traylor. There's a one-minute gap between the time the police officer completed writing the ticket and the canine alert. And you're now saying we should excuse that failure under plein air analysis because it was actually maybe five or six minutes, or maybe even as many as seven minutes. Assuming we were to accept your argument, why shouldn't we at least give the government the right to go back to the district court and argue reasonable suspicion? I mean, I'm not sure we should make the reasonable suspicion determination, but I'm also not so convinced that we shouldn't give the government the opportunity to raise that argument since everybody was working on an erroneous factual assumption that you now say is plein air. So why shouldn't they have that opportunity? First of all, I'd like to clarify, what the court recited was kind of the magistrate and lower court's framework for analyzing this issue. That framework benefited the government by making it so the canine unit arrived much sooner than it actually did. So we simply argued the stop was over at 514 and that there's no way you can find on the record, and it is the government's burden to show that the canine alert could have occurred within one minute. We, the government had the opportunity to below to reject that framework. They had the ability to object to the R&R and say, actually, this threshold matter that was found by the magistrate court, it's not accurate. It extended at least to 518 or 519 or 520, whatever it needed. It had that opportunity to do so. It chose not to do so, perhaps because the framework established was the most beneficial to its position. So we're operating by the district court framework, and now we can see that the facts do not support that. The government did rely on reasonable suspicion in its response. They filed not only did not file any objections, judge, but they actually advocated for its unqualified adoption. So well, they incorporated all the arguments from the response, which included reasonable suspicion, but we'll let Mr. Casey argue that point. Okay, I've probably used all my time, but I'd like to reserve whatever I have left for rebuttal. Judge Malloy, did you have anything else for Mr. Maas? All right. Mr. Casey, we'll hear from you. May it please the court, Brian Casey on behalf of the United States, your honors. I think this is a case where the parties have, and maybe even the district court, done a really good job of making a very simple case look difficult. This is a simple case. The officer who pulled over Mr. Traylor had reasonable suspicion. He probably had reasonable suspicion to do an investigative stop at the time he pulled over Mr. Traylor, and certainly during the traffic stop, which isn't challenged, he further delay, extend the stopping time for the drug dog to get there. We're talking about a couple of minutes extension at most, and that extension is more than reasonable, given the facts that gave this officer a reasonable suspicion. And I think everything else is really just confusing the issue here. And to start with, the government, in their original opposition, argued the two arguments that we're making here on appeal, that there was a reasonable suspicion to extend the stop for the drug sniff, and that in fact, the stop didn't need to be extended because it all happened while the officer was still filling out and doing the activities incident to a stop. And our argument before the district court was checking in with the probation officer on Mr. Traylor's search condition was just an activity incident to the stop. Now, the district court decided on a different ground. It said it didn't look at the reasonable suspicion to extend, and it also didn't consider whether or not waiting to hear back from the parole officer was incident to a stop. It nonetheless said that it still happened, the dog alerted still within what Detective, I'm sorry, Sergeant Brown's normal activities for the stop would be. And the government, Mr. Moss is right, the government didn't object to that alternative holding, but it also, twice, I mean, so one paragraph, and this really is what begins to confuse the issue. The government filed a one paragraph response where it twice incorporated its prior arguments. So any suggestion that the government was abandoning arguments is simply contrary to the record. Can I ask a question about that short sort of adopt the R&R filing? And assuming that everybody sort of had the timing off here, the magistrate did conclude that Brown's subsequent efforts to call the probation officer were extraneous to the mission and did prolong the stop. Now that everybody seems to be in agreement on the timing, do you agree with that? That when you said, please adopt the R&R in its entirety, that conclusion is still there. Do you think that that's still a valid conclusion of the magistrate that you have now adopted? How do we look at that? I don't think so, Your Honor. I think, you know, the fact that, again, the single paragraph says, you know, we incorporate the arguments from our response and for the reasons stated in that response. And that response. And I guess my question is, is that's contradictory, right? Your argument would have been, I'm assuming, would have been contrary to this conclusion. And so to adopt both simultaneously, which one do we pick? Your Honor, I think you stick with the prior, more fleshed out arguments. I admit that the response, the objections were not as fulsome as they should be. And I admit that they were somewhat inaudible. But I do think the clear intent of them was to preserve the earlier, to preserve the earlier arguments. And we do make that argument that the stop wasn't prolonged. But again, I think that that's not what this court needs to even reach that because of the reasonable suspicion. Reasonable suspicion here is so clear that it really isn't the rest of the other arguments really are not what the court needs to look at. What are you sure that? Go ahead. Go ahead. Go ahead. No, sorry. Please go ahead. Please. I mean, I have to go back to Judge Kelly's question. I'm not sure that just saying we agree with the magistrate judge, but also look at our Mrs. Judge, what we met from our prior pleading, that that's what the rules require when it says you specifically have to object. So what's the district judge to do at that point? You say we agree, but look at our prior pleading. And is the district judge at that point then supposed to say, well, now I got to compare the prior pleading to the specific objection? I think your honor. Is that what the rules require? I think your honor, the specific objections with regard to the facts are a little different than the objections with regard to a legal argument preserving. And I'm not sure. And I would have to. I'm sorry, Judge Kelly. I need to look at the facts again. I'm not sure that there's a factual finding that the stop was prolonged. And if it is, then I'm wrong. But I do know that there was that legal conclusion there. And this court certainly with regard to appellants makes a significant distinction between objecting to factual findings, which you have to do in order to preserve that objection for appeal and objection to legal conclusions, which you don't have to do in order to preserve that for appeal. Now, that's for appellants. I think for appellees where the appellee doesn't have a burden of preservation, and I think Mr. Baas's argument that we do is just simply wrong, and we filed a 28-J letter establishing that, we don't have a burden as the appellee of preservation. We're not cross-appealing. And there's no obligation for us to file cross-appeals in this context. So I think there is a distinction there, Judge Malloy, between the legal finding and the factual finding. Are you saying, Mr. Casey, that taking all the facts in the magistrate judge's order, accepting the one that's now agreed to be incorrect, that you think there's reasonable suspicion to justify a prolonged seizure? Yes, Your Honor. I am, but I'm also, I think you're confusing what the record is. The record is not just the factual findings of the magistrate judge. The transcript and the video are also the record in this case, and the court can refer to those. Well, I don't know. You think if there's somebody testified to something, we can refer to it, but if we don't have a finding as to whether or not it's a fact, what makes you say we can rely on it? Well, because the review is whether the facts are clearly erroneous, not whether there's additional facts that the court has in front of it. And I think, you know, there is things that happened on the video. For example... Well, if it's on the video, that's maybe different because of Scott versus Harris and the fact that there's not really any other possible fact to be found. But if you're talking about testimony, that might be different. Well, for example, the factual findings say that the detective had, you know, prior knowledge about Mr. Traylor's car being parked at an address near McGuire Street and an address near Clark Street. If you read the transcript, it's not just that he was given information. What the officer testifies to is that he saw the car there at those two addresses. And so if the court wants to just look at the facts as found, then yes, there are more than sufficient facts to find that he had reasonable suspicion to suspend. But if you look at his actual testimony, it more than corroborates and, in fact, extends to those facts, and those details are also important. So I do think you can take those two together. If he testified to something that is not inconsistent, but rather further supports what the court found, then yeah, I do think that that's testimony you could credit because it's implicitly credited in the court's findings. And that's largely what we would be looking at here. I do want to make, before my time runs up, one comment about the reply brief. To the extent the reply brief is leveraging or making an accusation of prosecutorial misconduct, it's the government's position that it's entirely inappropriate. There's no legal basis for it, and it was done in a reply brief, so we hadn't had an opportunity to appropriately brief it. But any allegation is somehow based on some sort of withholding or some sort of failure to disclose. The fact was in the government's response. In fact, even Mr. Moss's brief notes that it was in the government's response. It wasn't withheld. The fact was provided in discovery. The fact was on the video. The fact was elicited in testimony that a particular car driving by was, in fact, the car of the drug officer. There's nothing hidden or withheld, and there's no ground to accuse the government of misconduct with regard to that. If there are no further questions, the United States asks this court to affirm. All right. Thank you for your argument. I think Mr. Moss used his time. Is that right? Yes. Do you have anything urgent, Mr. Moss? Probably do. We'll give you one minute. Thank you, Judge. A couple of things. Undisputed, what should have been a five to ten minute traffic stop was converted into a stop that lasted more than 20 minutes. First point. Second point. The magistrate court found that calling the probation officer was extraneous to the stop. The government asked the court to adopt that, the district court, and they argued something at this point. Actual findings, we just disagree, and the court can look at the dash cam and the transcript and see the magistrate court did not find the findings that the government relies on in their brief. I can't speak to what went into their mind, but I simply know that they advocated for a framework that was more beneficial to their position, and that's fine, but that's also a strategic decision, and we believe that strategic decision should be in effect, and they should not be able to benefit and basically get a second bite at the apple by a remand. That's all I have. Thank you. All right. Thank you both, counsel, for your arguments. The case is submitted, and the court will file an opinion in due course.